### 4915.   SMITH *v.* ROTHSCHILD & COMPANY.

1. There was sufficient evidence to authorize the finding that title to the property levied on was in the defendant in execution at the date of the levy.
2. Where property is levied on as that of a husband, and his wife files a claim, and, under the evidence, the main issue is as to whether the wife's claim is collusive and fraudulent, and the jury are authorized to find that it is, they have the right, if they find for the plaintiff, to assess damages on the ground that the claim was filed for delay.
3. The instruction to the jury that if the husband made a sale of a stock of merchandise in bulk to his wife, the sale would be void unless the provisions of the "sales in bulk act" had been complied with, even if the instruction was not applicable to any issue raised by the evidence, was, nevertheless, harmless to the claimant.
4. While, after the filing of a claim and after a return of the papers to court, the sheriff has no right, without permission of the court, to amend his return of levy, still if he does so, and, on objection at the trial, the return is treated as if the addition had not been made, and the claimant is accorded all the rights he would have had under the return as first made, a verdict in favor of the plaintiff will not be set aside merely because the court did not pass an order striking from the return the words so added.
5. Where, in the trial of a claim case, the claimant denies that the defendant in execution was in possession at the date of the levy, it is not error to award to the plaintiff in fi. fa. the opening and conclusion.

6. Counsel for the plaintiff having remarked in the hearing and presence of the jury, while the claimant was on the stand as a witness, that if the claimant "were let alone, she would impeach herself," and counsel for the claimant having promptly moved for a mistrial on account of this remark, and the court having declined either to award a mistrial or to rebuke counsel, a new trial should have been granted upon this ground. DECIDED AUGUST 25, 1913.

Levy and claim; from city court of Bainbridge—Judge Spooner. April 17, 1913.

*G. G. Bower,* for plaintiff in error. *P. D. Rich,* contra.

POTTLE, J. An execution issuing from the city court of Bainbridge, in favor of Rothschild & Company against W. J. M. Smith, was, on August 9, 1910, levied by the sheriff upon a stock of goods in a storehouse in the village of Eldorendo. Annie M. Smith, the wife of the defendant in fi. fa., interposed a claim. On the trial the jury found in favor of the plaintiff, and also assessed damages against the claimant for delay. Her motion for a new trial was overruled, and she excepts.

1. It is insisted that a verdict in favor of the claimant was demanded by the evidence. Both the claimant and her husband testified, in substance, that during September, October, and a part of November, of 1909, the husband conducted a small mercantile business in the storehouse in which the goods were situated at the time they were levied on; that in the latter part of November the stock had run down until there were in the storehouse only fifteen or twenty dollars worth of goods; that these goods were moved out of the storeroom by the husband, either up-stairs in the building where he and his wife resided, or to his farm some distance from Eldorendo; that after this was done the wife, with her own money, which she had obtained from insurance upon her father's life, bought the stock of goods in the storehouse in the latter part of November, 1909, and thereafter conducted the business in her own name. Both the husband and the wife testified positively that at the time the levy was made, the husband did not own any part of the goods levied on. The plaintiff's theory of the case was that the merchandise belonged to the husband, and that when he became indebted he abandoned the business and put his wife in control, either by selling to her the goods in bulk or by making to her a gift of the merchandise. In support of this theory the plaintiff introduced a witness by the name of Williams, who testified that he

resided in Eldorendo, which was a small place containing only three stores; that he himself was a merchant, conducting a business within sixty feet from that of Smith; that the stock of merchandise in the storehouse with the Smiths did not run down as claimed by them in November, 1909, and that Smith simply abandoned the business and put his wife in charge. This witness swore positively that no goods were carried off and none brought in. He further testified, that Smith told him that he had sold the stock of merchandise to his wife, and that he (the witness) could swear of his own knowledge that the wife began business with the same stock of merchandise with which Smith had been conducting the business, and that the stock had not noticeably run down as claimed by the Smiths. Other witnesses testified, that they lived in the vicinity, and had an opportunity to observe the store from time to time; that if any goods had been moved out and replaced with new stock, they would have known it, and that they had never seen such an occurrence take place. We think the evidence raised an issue of fact in reference to the ownership of the property, which was properly submitted to the jury for their determination. Even in ordinary cases slight evidence of fraud may be sufficient to carry a case to the jury on this issue. Civil Code, § 4626. In transactions between husband and wife the rule ought to be applied with even more strictness. Civil Code, § 3011.

The evidence of the declarations of the defendant in fi. fa., unfavorable to the claimant's theory, was not objected to. Admissions or declarations of a defendant in fi. fa., made while the defendant is in possession, are generally admissible against the claimant, but not if made after the defendant has parted with possession. *Banks* v. *McCandless,* 119 *Ga.* 793 (47 S. E. 332); *Ozmore* v. *Hood,* 53 *Ga.* 114. The bona fides of the wife's claim of title rested upon the claim of both the husband and the wife that his stock of merchandise had run down and that what remained had been moved out and replaced with goods bought by the wife. Witnesses who were in a position to know testified positively that no such substitution of stocks had taken place, but that on the contrary the husband simply went out and the wife went in, and took possession of the stock with which the husband had been conducting the business. The jury had a right to accept this testimony; and, if so, they had the further right to disbelieve the testimony of both the husband

and the wife that she had replenished the stock with her own money; especially in view of the husband's statement that he had sold out to his wife.

2. The jury having reached the conclusion that the claimant and her husband had colluded to defeat the plaintiff's demand, they were also authorized to find that the claim was instituted in bad faith, and hence merely for delay. See Civil Code, § 5169. This is not like a case where a claimant in good faith tests a doubtful question of law (*Clark* v. *Lee,* 51 *Ga.* 284); nor a case where one not a party to fraudulent collusion, and without notice of the fraud, in good faith files a claim in order to test the question whether the property was sold to him to hinder, delay, or defraud creditors. *Planters' and Miners' Bank* v. *Willeo Cotton Mills,* 60 *Ga.* 169.

3. The charge of the court on the subject of sales of goods in bulk was probably not applicable, but it did the claimant no harm. Its effect was that even if the jury should believe the husband had in good faith sold the stock of goods in bulk to his wife, the sale would be void, under the "sales in bulk act." Civil Code, §§ 3226 et seq. If the evidence authorized the charge, it was properly given; if not, it was harmless and did not prejudice the claimant in reference to the real issue in the case, which was whether her claim of title was bona fide and well founded, or was fraudulent.

4. After the levy by the deputy sheriff, the sheriff added to the return the words: "Same in the possession of W. J. M. Smith." Claimant's counsel moved to strike these words from the levy, upon the ground that they were used without authority. The claim having been filed and the papers returned into court, the sheriff had no authority to amend his return without permission of the court. But the only advantage which the claimant could obtain from having his motion sustained was to prevent the plaintiff from making out a prima facie case upon the sheriff's untraversed return. As the plaintiff took the burden, the claimant accomplished all she sought, and it was not prejudicial that the court did not formally strike from the return the words added by the sheriff.

5. The position assumed by the claimant in denying that the defendant was in possession was inconsistent with her claim to the opening and conclusion, and the court did not err in holding that the plaintiff was entitled to open and conclude.

6. A new trial is granted in this case solely because of the remark made by counsel for the plaintiff, set forth in the sixth head-

note. The counsel states in his brief that the remark was really made to counsel for the claimant and in a colloquy between the attorneys, and was not intended for the jury. We must, however, take the record as it is. From the motion for a new trial it appears that the remark was made before the jury and in their hearing. In making the remark counsel went beyond his right to comment upon the evidence and the witnesses in argument to the jury. If the testimony of a witness authorizes the conclusion, an attorney may properly argue that the witness has shown himself to be unworthy of credit, on account of the unreasonable and contradictory statements appearing in the testimony; but this is quite a different thing from telling the jury, while the witness is on the stand, that if he is let alone he will impeach himself. In harmful effect this may be equivalent to testimony that the witness is of bad character and not worthy of credit; and a witness is impeachable only by legal evidence. In the case of a popular and influential attorney, such as was the counsel who made the remark in this case, an expression of his opinion as to the character of the witness is likely to have weight with the jury and to prejudice the adversary's case. And especially is this true where the presiding judge, on his attention being called to it, fails to rebuke counsel, and in the minds of the jury, by his silence, puts the stamp of his approval upon the remark so made. This court has several times indicated its disposition to require counsel and litigants to adhere to the rules of correct practice, that the trial may be orderly and free from unfair and prejudicial matter, either of evidence or of argument. The object of all legal investigations is the discovery of the truth, but truth must be discovered by the application of rules of law to competent and relevant evidence, and after a trial in accordance with orderly procedure. The remark made by counsel in the present case was doubtless inadvertent and not intended to prejudice the adversary's case. But its harmful effect was not removed, either by a withdrawal of the improper remark and explanation by the counsel, or by a rebuke by the court; and as counsel for the claimant, by moving for a mistrial, promptly invoked a ruling from the court, we feel constrained to reverse the judgment overruling the motion for a new trial on this ground. *Martin* v. *State,* 10 *Ga. App.* 798 (74 S. E. 306); *Clarke* v. *State,* 5 *Ga. App.* 93 (62 S. E. 663); *Pelham R. Co.* v. *Elliott,* 11 *Ga. App.* 621 (75 S. E. 1062).

*Judgment reversed.*